Kern's Estate.

Submitted February 12, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Robert V. Bolger*, for appellant.—The life estate given to the widow is terminated by her election to take against the will and the remainder interests are therefore accelerated, entitled petitioners to immediate possession of their shares: Rogers' Est., 17 Phila. 478; Disston's Est., 257 Pa. 537; Beckerts' Est., 68 Pitts. L. J. 569.

The will manifests the intention of testator to be that his children shall respectively receive equal estates in remainder and that such estates should be absolute and in fee: Wyllner's Est., 65 Pa. Superior Ct. 396; Cross v. Miller, 290 Pa. 213.

Testator, in providing that the shares of a child or children of any deceased child or children, should go to them per stirpes, indicates that he meant the shares to be taken by his own children should be absolute and in fee on the date of the death or sooner termination of this particular estate.

The provision that the share of any female shall be for life only with power of appointment by will should be construed to be in the nature of a substitutionary limitation over and have application only to any female person being a descendant of a child or children of the testator who has died during the lifetime of the widow and the continuation of her estate throughout her lifetime and that it has no application to the shares given to the children of the testator, who, on the contrary, are entitled to take absolutely and in fee: Borda's Est., 10 Pa. Dist. R. 117; Well's Est., 14 Pa. Dist. R. 54; Sharpless' Est., 209 Pa. 409; Mickley's App., 92 Pa. 514; Biddle's Est., 28 Pa. 59; Disston's Est., 257 Pa. 537; Caldwell v. Skilton, 13 Pa. 152; McAlpin's Est., 211 Pa. 26.

The auditor held that the question of whether the provisions of the will violated the rule against perpetuities must be considered in the light of the conditions as they existed following the election of the widow to take against the will, the other interests being accelerated by

352

this election; this finding is unsound: Feeney's Est., 293 Pa. 273.

The proviso that the share of any female shall be in trust for life with power of appointment by will in conjunction with the prior proviso that the share of any child or children of the testator who predeceased the widow shall descend to the child or children of any such deceased child or children, offends the rule against perpetuities in this, that the person appointed by said child or children of any child or children of the testator might not take and the share so appointed, therefore, will not vest until after the lapse of a life or lives in being plus twenty-one years after the date of the death of the testator: Powell's Case, 39 L. J. Ch. 188; Johnston's Est., 185 Pa. 179; Lawrence's Est., 136 Pa. 354; Gerber's Est., 196 Pa. 366; Coggin's App., 124 Pa. 10; Hillyard v. Miller, 10 Pa. 326; Smith v. Townsend, 32 Pa. 434; Donohue v. McNichol, 61 Pa. 73.

Under the qualifications of said provisos, the power of appointment might not be capable of being exercised within the period provided under the rule against perpetuities: Bristow v. Boothby, 2 S. & St. 465, 1826.

There is no substitutionary limitation over in event of the failure of the donee of the power to appoint, in which event an intestacy as to such share would result: Kountz's Est., 213 Pa. 390; Johnston's Est., 185 Pa. 179; Chew's App., 37 Pa. 23; Weber's App., 17 Pa. 474; Malone v. Dobbins, 23 Pa. 296.

No brief for appellee.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 18, 1929:

These two appeals, involving the construction of the will of Richard Kerns, deceased, were argued together and may be disposed of as one. Appellants are two of the daughters of testator. He died November 12, 1925, leaving to survive him a widow and six children, two

sons and four daughters, all of full age and two of them married.

The will of decedent reads, inter alia, as follows: "I give and bequeath unto my wife, Annie C. Kerns, the income from my entire estate during her natural life, and at her death, I direct that the principal of my estate shall be equally divided among my children; Provided, however, if any child shall be at that time, deceased, leaving children surviving, then such surviving children shall take the share its parent would have taken if living; and Provided further, that the share of any female shall be held in trust, by such trustee as she shall name, she to receive the income thereof during her life time, with the power, however, of disposing of the principal only by will."

The widow having elected to take against the will, appellants maintain, and the court below correctly decided, that the legal result of this action was to make the estate distributable as though she were dead: Vance's Estate, 141 Pa. 201, 213; Disston's Estate, 257 Pa. 537, 541; Loew's Estate, 291 Pa. 22, 28-9; Packer's Estate (No. 2), 291 Pa. 198, 200. The court further decided that "the daughters have only life estates, with power of disposition of the corpus by will."

Appellants contend, on several grounds, it should have been decided that the second proviso in the will (relating to gifts to "any female"), was not intended to apply to them, and, taken in conjunction with the first proviso (substituting grandchildren in the event of the children being dead), could not legally be so applied as to reduce what, in the principal clause, appeared as a gift of absolute estates to them; therefore, that they should have been held to be seized of estates in fee, instead of life interests with powers of appointment by will.

The initial argument made by appellants is that the first proviso is merely concerned with an alternative limitation to grandchildren, who, thereunder, would

take per stirpes should their parents be dead at the time of distribution; that, since the time for distribution has arrived, and none of the parents are in fact dead, this substitutionary provision' is rendered ineffectual; and that the second proviso is "inextricably connected" with the thought conveyed in the first proviso, therefore it also must be viewed as merely substitutional in character, and as not intended to apply where, as here, no substitution of testator's grandchildren for his children need be made.

Although appellants correctly construe the first proviso, they totally disregard the clear and unequivocal language of the second, which, in testator's own words, is to apply to "the share of *any female*" (the italics are ours),—a classification sufficiently large to include both female children and grandchildren. While appellants would restrict the provisions of the second proviso to the substitutionary beneficiaries mentioned in the first proviso, there is, as a matter of elementary construction, more reason to apply them to the original beneficiaries, other than the widow, mentioned in the principal clause of the will; for, as we recently said in Montgomery v. Martin, 294 Pa. 25, 32: "The office of a proviso is to qualify, restrain or otherwise modify the general language" of a principal clause; "a proviso......can have no existence separate and apart from the provision which it is designated to limit or qualify." We there further pointed out that "these are not technical but common sense rules, applicable to the interpretation of any written instrument." True, a proviso may be "deemed to apply......to the immediately preceding clause or provision" alone (25 R. C. L. 986, section 232, and authorities cited in note 17), but, as pointed out in State v. St. Louis, 174 Mo. 125, 143-4, 61 L. R. A. 593, 599, this means, "unless there is something in the subject-matter which requires a different construction." Here, though the second proviso may qualify the first, it undoubtedly also qualifies the principal clause, for

the expression "any female," used for the first time in the will after mention of both children and grandchildren, is, on its face, applicable to both, in the absence of anything limiting it to either class of female descendants. Moreover, not only does the linking together of the two provisos by the conjunction "and" reënforce a construction which permits applying both of them to the principal clause as well as to each other, but the second proviso begins, "Provided further," which means that what has already been limited by the first proviso is now further limited, or, in other words, that the principal clause, directing that decedent's estate "shall be equally divided among [his] children," is further qualified by the trust as to females. Even if it were true that thus construed the will would, under certain contingencies, result in intestacy as to some part or parts of decedent's estate, yet this, while constituting something to be taken into account in construing the will, could not alter what we conceive to be its plain meaning; hence it is unnecessary to discuss the lengthy argument made by appellants to the effect that a will ought not to be construed so as possibly to bring about an intestacy if some other construction is equally available. Nor is it necessary to take up their argument that the trust proviso, if construed to apply to appellants, would represent an attempt to cut down an absolute estate already given in fee, any further than to note that, in the will before us, both provisos must, as already said, be read as qualifying the principal provision, or the gift itself. In short, this will falls within the principle of Reiff v. Pepo, 290 Pa. 508, 512, and is not governed by the line of cases concerning attempts to cut down estates in fee, contained in appellants' brief.

The next contention presented by appellants involves the more serious proposition that the effect of the provisos,—accepting them as applicable to all females, and taking them together,—is to breach the rule against perpetuities, since it might have eventuated that the power

of appointment vested in female grandchildren could not, in some instances, have been exercised until a period had elapsed sufficient in length to outlaw the power. In their brief, appellants state the proposition thus: "If the power created by the testator were to vest in a female child of a child of the testator, such female child, in whom the power reposed, not being in esse at the time of the creation of the power, viz., the testator's death, this female child would not represent a life in being at the time of the power's creation as required by the rule; and, furthermore, considering the fact that the power could not possibly be exercised until the death of such female child (grandchild of testator)......, the exercise itself might not possibly occur until a period greater than the life in being [at the death of Richard Kerns] and twenty-one years thereafter."

The weakness in appellants' contention is in treating the testamentary provisions for decedent's daughters and those for his granddaughters as though they were inseparable. Gray, in his "Rule against Perpetuities" (3d ed., p. 342) states, "When gifts are made to several persons by one description, but the amount of the gift to one is not affected by the existence or nonexistence of the others, then the gifts are separable"; again he states (p. 343), "Although the amount of each legacy is dependent upon the number of legatees, yet, if this number must be determined within the required limits, the gifts are separable"; still again (p. 345), "When, on a gift to a class, the number of shares is definitely fixed within the time required by the rule against perpetuities, the question of remoteness is to be considered with reference to each share separately."

Here, while testator made a common provision for holding in trust the shares of all female beneficiaries, whether daughters or granddaughters, yet, so far as the applicability of the rule against perpetuities is concerned, the gifts to the first are separable from those to the second; neither is, in any sense, dependent on the

other, for the failure, because of the applicability of the rule, of any of these gifts would in no way affect the amounts passing to the other devisees; or, more specifically, while the rule against perpetuities might have been applicable to female children of a child of testator dying during the life estate of his widow,—so that such grandchildren, had there been any, would have taken free of the trust set up by the second proviso,—yet this would not necessarily make the rule applicable to those in the position of appellants,—that is, to surviving daughters of testator. As stated in 21 R. C. L. 320-21, section 54: "Where the various provisions of a will are in fact independent......, those which are contrary to the rule [against perpetuities] may be rejected and the valid provisions upheld; the test is whether the rejected parts may be expunged without essentially changing the general testamentary scheme. This can usually be done when it is clear that the gifts which do not transgress the rule are so independent that it is manifest the testator would have desired that they should stand if he had been aware of the invalidity of the rest...... An important class of cases in which the principle under consideration is applied consists of those in which the gifts are made concurrently to several persons; [in such cases,] if the devises are made independently of each other, although of fractional undivided interests, and some alone contravene the rule against perpetuities, the remaining gifts may be sustained." Again, Reeves in his book on Real Property, vol. II, at pages 1283-4, section 970, after recognizing that, at common law, a gift would not ordinarily be accounted separable unless the testator himself had divided it, goes on to say, "But the courts of today, and especially those in this country, will cut off and discard an invalid provision, in all cases where it is reasonably separable and is not an essential feature of an entire scheme." See also Johnston's Estate, 185 Pa. 179, 190; Whitman's Estate, 248 Pa. 285, 290; Landram v. Jordan, 203 U. S. 56, 63; Hills v. Si-

monds, 125 Mass. 536, 540-41; and see at length the note to Johnston's Estate, supra, as reported in 64 Am. St. R. at page 634; finally, see Reid v. Voorhees, 216 Ill. 236, 74 N. E. 804.

In the present instance, plainly the substitutionary gifts to possible children of possibly deceased children are not "an essential feature of an entire [testamentary] scheme," in the sense that the invalidity of such gifts would structurally spoil a general plan of distribution which the testator had in mind when he drew his will; Feeney's Estate, 293 Pa. 273, 288-9; see also McCaskey's Estate, 293 Pa. 497, 508-9. Here, there is nothing to suggest that testator would have omitted to create the trust for his daughters had he realized that he could not validly withhold full control over the disposition of those parts of his estate devised, by substitution, to unborn female grandchildren, who might come into being after his own decease; on the contrary, it seems manifest that the principal purpose which actuated testator to write the trust provision, found in the second proviso, was to protect his daughters. The possible protection of granddaughters through such trust must necessarily have been a subordinate thought, for, as a matter of fact, testator had four daughters but no granddaughters, and the gifts to any and all grandchildren were merely substitutional. But whatever may have been the testator's thoughts in this respect, the gifts are not dependent on one another; so one, with all its restrictions, may stand, while the other falls.

The learned court below, in its reading of the will, avoided the main question involved in this case by completely eliminating therefrom the first proviso, which mentions testator's grandchildren as substitutionary legatees, and quoting the instrument as though that part of it was nonexistent; then, after stating the will in this way, the court says, in its opinion supporting the decree appealed from, that "The testator's language is as plain as it can be written and his intention is per-

fectly manifest and violates no rule of law." We have taken the will as a whole, however, and, after so doing, agree with the conclusions of the court below that "the daughters have only life estates with power of disposition of the corpus by will," and that the testamentary provisions for them "violate no rule of law."

It would serve no useful purpose to discuss other points raised by appellants; though we may add that a trust can be created "as a protection to the beneficiary ......for any......purpose, not illegal, which the benefactor may deem wise or expedient" (Spring's Estate, 216 Pa. 529, 534) ; and, of course, a trust can be created to conserve property pending the exercise of a power of appointment after a life estate; finally, it is not essential to the validity of a trust that a trustee be named by the testator : Toner's Estate, 260 Pa. 49, 54, 55, and authorities there cited.

The decree is affirmed, costs to be paid out of the estates held for appellants.