## McCrea's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne, and Sinkler, JJ.

The facts appear from the following extracts from the adjudication of

GEST, J., auditing judge.—John McCrea died on September 11, 1932, unmarried, his wife having predeceased him in 1907, leaving a will and seven codicils, admitted to probate on November 14, 1932, when letters testamentary were granted.

Proof of advertisement of notice thereof was produced to the auditing judge.

The testator left surviving him as his next of kin and heirs at law seven children: Letitia M. McCrea, Nellie Christy, Annie B. Friel, Margaret or Maggie McCrea, Florence or Floria McCrea, M. James McCrea, and John J. McCrea. Another daughter, Mary R. McCrea, predeceased him without issue.

By his will, dated July 21, 1904, the testator directed his executors to set apart $500 to be invested and the income to be used for masses, in case he had not done so in his lifetime; but, in his lifetime, the testator executed three deeds of trust for the purpose mentioned, as set forth in the petition for distribution, so that this provision of the will becomes inoperative. The testator then devised his residuary estate to his executors in trust to invest the same and pay over the income to his six daughters by name for their lives, whose names are stated above (one of them, Mary R. McCrea, having predeceased him without issue), providing that on the decease of any of his daughters, leaving issue her surviving, the said issue should take and receive the parent's share of the income, and in the event of any of his said daughters dying without leaving issue her surviving and the said issue should afterwards die, thereby leaving no direct descendants of the daughter so dying, then, from and after the happening of either event, the share of the income of his estate, payable as aforesaid to the daughter so dying or to her issue after her decease, should

652

be paid to her surviving sisters and to the issue of any such as should then be
deceased in equal parts or shares, etc. The trust was to continue for the lives
of his daughters and the survivor of them. And he directed that upon the
decease of the last survivor of the said six daughters the entire residue of his
estate should be distributed among his direct descendants, issue or descendants
of his daughters or any of them, according to the provisions of the intestate
laws of the Commonwealth of Pennsylvania then in force and operation, with
further provisions that neither the principal nor the income of his estate should,
at any time, be subject or liable, in the hands of the executors or trustees, to
the debts, contracts, or engagements of any of his said daughters or lineal
descendants, nor to attachment, sequestration, or other legal process to enforce
payment or collection of the same, nor should any income be capable of being
assigned or be payable by way of anticipation; and further that all the provi-
sions in favor of any female child or descendant should be for her sole and
separate use notwithstanding her coverture, etc.; and he further authorized
each of his said daughters, by legally executed last will and testament or writ-
ing in the nature thereof, to designate and appoint such of his lineal descend-
ants, meaning thereby any of his said daughters or their direct descendants,
as they might select, to receive and take, after their decease and until the
death of the last survivor of his daughters, the share of the income theretofore
payable to the daughter making such disposition, and to direct in what pro-
portions said income should be paid, but, in default of such appointment, he pro-
vided that the said share should be payable, after the decease of said daughter,
as is thereinbefore directed. The testator in his will made no provision for his
sons and stated his reason for omitting them. The will was carefully drawn,
but the testator added seven codicils.

By codicil no. 1, of March 6, 1916, the testator provided as follows:

"I direct that the net income from my residuary estate shall be divided into
twenty-one parts, of which my daughter, Nellie, wife of William J. Christy,
is to receive four parts, and my daughters, Annie, Margaret, Florence and
Letitia (the last named being the wife of Joseph J. McCaffrey) are to receive
each three and one-quarter parts, and my two sons, John J. and M. James, each
two parts. Upon the death of my son John J., the share of income to which he
was entitled, shall be distributed to my other children, share and share alike.
To my children, with the exception of my son, John, I give the power to appoint
by any last Will and Testament or writing in the nature thereof, the income to
which he or she was, during his or her life, entitled, and which would have been
paid to such child had he or she lived until the termination of the trust estate.
And in default of such appointment, the said income shall be distributed as pro-
vided in my Will. Whereas my will provides that the trust of my residuary
estate shall terminate upon the decease of the last survivor of my five daughters,
I now revoke that provision and direct that the trust shall terminate when my
youngest grandchild shall have attained the age of thirty years and all of my
children are deceased."

Codicil no. 2, dated December 7, 1916, need not be recited, as it does not affect
the question presented at the audit.

By codicil no. 3, dated October 8, 1920, the testator provided:

"I desire that instead of the division I have made in my will of the income
from my estate, that all of my seven children should share in the said net income,
share and share alike, under and in accordance with all the stipulations in my
will and when a final distribution of my estate takes place among my grandchil-
dren living at that time, they, my grandchildren, shall share in my estate, share
and share alike per capita and not per stirpes, for as they are all alike dear to

me, I want all to share alike. Should any of my grandchildren die before a division of my estate takes place, the share of any such is to go to my other grandchildren for in no case or any circumstances is any part of my estate to go to any but my blood relations. Should any of my children die without leaving issue, they can will their portion of my estate to any of my other children or to my grandchildren. In all other respects I ratify and confirm my said will."

By codicil no. 4, dated July 28, 1922, the testator provided:

"I appoint my daughter, Margaret, to be the guardian of the estates of my grandchildren who may become entitled to a share of my estate, and direct that she shall receive the income to which they may be entitled and dispense it for their benefit until they shall arrive at the age of thirty years, at which time they shall become entitled to the principal of my estate. I revoke my said will and codicils in so far as they are inconsistent herewith, but in all other respects re-declare, re-publish, re-confirm and re-execute the same."

By codicil no. 5, dated January 28, 1927, the testator provided:

"Having recently found out that a number of my grandchildren are addicted to the cigarette habit, and having all my life detested this habit, as well as the use of alcohol, it is my Will that none of my grandchildren who at the time of my death or thereafter shall be given to smoking cigarettes or using tobacco in any form or imbibing in spiritous liquors shall receive any interest whatsoever in my estate, their interest to be divided equally among the remaining grandchildren."

Codicil no. 6, dated August 23, 1929, need not be recited, as it does not affect the question presented at the audit.

And by codicil no. 7, entitled "Binding instructions to the trustees and executors of my last will", dated October 15, 1930, the testator provided:

"Under no circumstances nor under any conditions whatever, is any part of the income of or from my estate to be paid to any person but to my children as specified and named in my last will. Nor have any of my children any right whatever to sell mortgage or in any way give any right title or interest to their share of the income derived from my estate and my Executors and Trustees are hereby strictly enjoined from recognizing any and all orders sales, etc. made by any one of my children.

"As I have the unquestionable right to dispose of this property as I see fit I therefore leave it absolutely to my children, but which must be preserved by them absolutely from any encumbrance of any kind whatever. But as they have no power whatever to do so, but furthermore the income from my estate is in no way liable for any obligations of any of my children of any nature or kind whatsoever." . . .

The children of the decedent, with the exception of M. James McCrea, claim that the principal of the estate should be awarded to them absolutely, on the theory that the will and codicils violate the rule against perpetuities, especially the last codicil dated October 15, 1930.

I shall first consider the latter argument, involving the construction of the codicil of October 15, 1930. This is styled "Binding instructions to the trustees and executors of my last will", and impresses upon the trustees, who are to carry out the provisions of his will, which manifestly refers to his will dated July 21, 1904, his wish that none of the income of his estate shall be paid to any person but to his children as specified in his last will. He prohibits his children from selling or mortgaging their interest in the income, thus emphasizing the similar provision in his will, and concludes by saying: "As I have the unquestionable right to dispose of this property as I see fit, I therefore leave it absolutely to my children," etc. It seems to me to be clear beyond any reason-

able doubt that all that he intended to do was further to emphasize his direction that his children should not encumber their interest in his estate, and when he says "this property" he does not mean his general estate as a whole, but only the income thereof to which his children are entitled. To hold otherwise would mean that the testator, referring as he does to his last will, which he expressly ratified and confirmed in the prior codicils of March 6, 1916, December 7, 1916, October 8, 1920, July 28, 1922, and August 23, 1929—in fact all his prior codicils, except that referring to the cigarette habit of some of his grandchildren— intended to overthrow and obliterate the elaborate provisions of his will and five codicils and give everything outright to his children. This construction of the last codicil seems to me to be impossible and must be dismissed.

The only question therefore is whether, under the will as modified by the codicils referred to, the rule against perpetuities is violated. Now, the preliminary question in cases like the present is, according to the decisions of our Supreme Court, whether the scheme of the testator in his will and codicils, as a whole, was to tie up the ultimate gift of his estate and prevent its vesting until a period too remote under the rule, and to use the antecedent particular estates simply as a means to that end, "a hook upon which to hang suspended a tied-up estate, until such time as testator desired it to be opened and parted": Johnston's Estate, 185 Pa. 179, 189, 190. Although Johnston's Estate has been criticised by some text writers, it is nevertheless authoritative in Pennsylvania. The court, however, should not be astute to infer an intention by the testator to violate the rule by testamentary artifice, but, on the other hand, should endeavor to carry out the provisions of the will, so far as it is possible to separate all limitations which are valid in themselves from those which cannot be sustained: McLaughlin's Estate, 14 D. & C. 725. And if, on examination of the provisions of the will and the codicils, it appears that the life estates given to the testator's children can be sustained, it should be so held, under the decisions in Whitman's Estate, 248 Pa. 285, Lockhart's Estate, 29 Dist. R. 179, affirmed in 267 Pa. 390, Ewalt v. Davenhill et al., 257 Pa. 385, and Kern's Estate, 296 Pa. 348.

Turning now to the will of 1904, we find a carefully drawn instrument by which the residuary estate is given to the trustees to pay the income to the daughters of the testator for their lives and the life of the survivor, etc., and it cannot be successfully argued that the remainders given after the decease of the survivor are too remote. In the will, the sons of the testator are excluded, but in the codicil of March 6, 1916, the sons are admitted as beneficiaries. It contains a provision, however, that the trust shall continue until the youngest grandchild shall have attained the age of 30 years, and all of the children are deceased, and it may be strongly argued that the remainders thus postponed are too remote, but, in connection with this codicil, should be considered codicil no. 3, dated October 8, 1920. This expresses the testator's intention that all his seven children should share in the income, under and in accordance with all the stipulations in the will, which might seem to mean until the death of the survivor of the children and not when the youngest grandchild should arrive at the age of 30, while the next codicil of July 28, 1922, appoints Margaret, his daughter, to be the guardian of the estates of his grandchildren and receive their income and dispose of the same until they arrive at the age of 30 years, at which time they shall become entitled to the principal of the testator's estate.

The construction of these three codicils is attended wih some difficulty, and able briefs have been furnished to me, but in my opinion they do not affect the right of the children of the testator to the income at the present time, and consequently the trust should, in the present circumstances of the case, be upheld.

I shall not attempt to express an opinion in this adjudication upon the construction of these testamentary papers, but, upon the death of any of the children, I think that the trustee should file an account, when the provisions of the will and codicils may again be considered in the light of the facts as they may then exist.

*Richard K. Stevens,* for exceptants; *Paul Reilly,* contra.

VAN DUSEN, J., December 1, 1933.—The will and codicils of the testator have been so thoroughly analyzed by the auditing judge that nothing can be added to what he has said. We all agree that in spite of Johnston's Estate, 185 Pa. 179, the tendency of the courts is very strong to uphold the initial life estates to the children of the testator, as the cases cited show. All are living, and when one of them dies it will be time enough to decide what shall be done next. Even if all other provisions of the will and codicils should be held to be void, the life estates which are good will not coalesce with any estates in remainder under the intestate laws, for the life estates are protected by spendthrift trust provisions: Moore's Estate, 198 Pa. 611.

The exceptions are dismissed, and the adjudication is confirmed absolutely.